

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-26-1998

# Gruber v. Hubbard Bert Karle

Precedential or Non-Precedential:

Docket 97-3477

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Gruber v. Hubbard Bert Karle" (1998). *1998 Decisions.* Paper 251.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/251

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 26, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-3477

ROBERT GRUBER, THERESA PENZA, on behalf of
themselves and all others similarly situated including
their dependents; GLENWOOD BEER DISTRIBUTORS,
INC.; BEECHWOOD INDUSTRIES, INC., on behalf of
themselves and all other employers similarly situated;
RALPH GENOVESE; AL CHANEY; BRIAN MILLER,
representative employee plaintiffs; PARAMOUNT LISTS,
INC., as a representative employer plaintiff

v.

HUBBARD BERT KARLE WEBER, INC.; JOHN GORDON;
J. PATRICK KARLE; RICHARD McCLURE; RONALD D.
MAXWELL; TIMOTHY MEHL; WILLIAM M. HILBERT;
J. BOYD BERT, JR.; C. JOHN WEBER, III; BUCKLEY
HUBBARD; BUCKLEY HUBBARD, III, individually and as
duly elected members of the Board of Directors of LEEA
and/or officers of LEEA

v.

PENNSYLVANIA INSURANCE GUARANTY ASSOCIATION,
Third-Party Defendant
(D.C. Civil No. 85-00063E)

WESTERN WORLD INSURANCE COMPANY, INC.
and TUDOR INSURANCE COMPANY

v.

BUCKLEY HUBBARD, JR.; BUCKLEY HUBBARD, III;
J. BOYD BERT, JR.; J. PATRICK KARLE; C. JOHN
WEBER; JOHN GORDON; RICHARD McCLURE;
RONALD D. MAXWELL; TIMOTHY MEHL; WILLIAM
HILBERT; HAMOT MEDICAL CENTER OF THE CITY OF

ERIE, PENNSYLVANIA, individually and on behalf of all
others similarly situated; ST. JOSEPH RIVERSIDE
HOSPITAL; ROBERT GRUBER, individually and on behalf
of all others similarly situated; and GLENWOOD BEER
DISTRIBUTORS, INC. individually and on behalf of all
others similarly situated; ERIE INDEMNITY COMPANY;
INDUSTRIAL INSURANCE COMPANY; PENNSYLVANIA
INSURANCE GUARANTY ASSOCIATION; LEXINGTON
INSURANCE COMPANY

v.

SAINT VINCENT HEALTH CENTER,
(Intervenor in District Court)
(D.C. Civil No. 87-00213E)

      Western World Insurance Company, Inc.
      and Tudor Insurance Company,

      Appellants

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civil Action No. 85-cv-00063E)
(District Judge: Honorable Maurice B. Cohill, Jr.)

Argued June 17, 1998

BEFORE: SLOVITER, STAPLETON, and McKEE,
Circuit Judges

(Opinion Filed: October 26, 1998)

      Susan Katz Hoffman (Argued)
      L. Suzanne Forbis
      Pepper, Hamilton & Scheetz
      3000 Two Logan Square
      Philadelphia, PA 19103-2799

      Attorneys for Appellants

Craig A. Markham (Argued)
Elderkin, Martin, Kelly & Messina
150 East Eighth Street
Erie, PA 16501

 Attorney for Appellees
 Robert Gruber, Theresa Penza, on
 behalf of themselves and all others
 similarly situated

Richard W. Hosking
Kirkpatrick & Lockhart
1500 Oliver Building
Pittsburgh, PA 15222

 Attorney for Appellees Hubbard,
 Bert, Karle, Weber, Inc.; J. Patrick
 Karle; Boyd Bert; C. John Weber,
 III; and Buckley Hubbard, III

James D. Morton
Buchanan Ingersoll Professional
 Corporation
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219-1410

 Attorney for Appellees John
 Gordon; Richard McClure; Ronald
 Maxwell; Timothy Mehl; and
 William Hilbert

Edwin W. Smith
Ely & Smith
23 West Tenth Street
Erie, PA 16501

 Attorney for Appellee Hamot
 Medical Center, individually and
 on behalf of all others similarly
 situated

　　　　Michael S. Jan Janin
　　　　Quinn, Buseck, Leemhuis,
　　　　 Toohey & Kroto
　　　　2222 West Grandview Boulevard
　　　　Erie, PA 16506-4508

　　　　 Attorney for Appellee
　　　　 Saint Vincent Health Center

OPINION OF THE COURT

STAPLETON, Circuit Judge:

This is the fourth installment in this lengthy and tortuous insurance saga. The case has come back to us after we dismissed it because the district court had not adjudicated all the claims in one of the actions in the consolidated case. The district court has since issued an order dismissing all ERISA claims, denying appellant's petition for a declaratory judgment, and entering final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. We will affirm in part and reverse in part.

I.

The Lake Erie Employers' Association ("LEEA") was formed in September 1981 as a non-profit corporation with the stated purpose of "foster[ing] and promot[ing] the mutual interests of those individuals, partnerships,firms, associations, and corporations who are engaged in business in the Northwestern Pennsylvania Area" and "foster[ing] and advanc[ing] a mutual cooperation and understanding among such businesses with the other economic entities affecting business in the area." See LEEA Certificate of Incorporation, at A65. "Any individual, partnership, firm, association, or corporation . . . engaged in business in the Northwestern Pennsylvania area employing at leastfive (5) but less than 150 employees and who is interested in the purposes of the organization" could apply for membership in the association.1 LEEA Bylaws Art. IV, P 1, at A72.

_____

1. The Bylaws were amended on April 25, 1983, to permit businesses employing up to 225 employees to apply for membership. See A103-04.

4

Associate membership was available for businesses having "a demonstrable material interest in the purposes of the organization" but not meeting the membership criteria. Id. P 3, at A72.

LEEA was the brainchild of J. Patrick Karle, one of the principals of the brokerage firm Hubbard Bert Karle Weber, Inc. ("HBKW"). Karle, who also served as President and Chairman of the Board of LEEA, testified that the idea for LEEA arose when HBKW observed the success that large employers had with self-funded health and benefit plans, and concluded that it might be possible for smaller employers to enjoy the same success with a self-funded alternative if they banded together. Karle Dep. of Oct. 7, 1986, at A743-44. He testified that LEEA was formed both to provide small businesses with an alternative health benefit option to that available from Blue Cross/Blue Shield and to serve as a forum where small business people could obtain information about changes in the laws and regulations governing employee benefits. Id. at A751. Toward the latter purpose, LEEA published a newsletter, approximately on a quarterly basis, that discussed changes in benefits law and provisions, as well as other matters that might be of interest to a small business person, such as tax and estate law. In addition, the association held two meetings a year at which legislators and other speakers would discuss topics of interest to the members or local health care providers would describe "wellness programs" that could assist the employers in the cost-effective provision of health benefits to their employees.

Despite its informational activities, it is clear that LEEA's primary purpose was the provision of health and other benefits to the employees of its employer-members. The first order of business, after incorporation and the appointment of officers and directors, engaged in by the Board of Directors of LEEA was "a discussion of the need to provide self-insured health benefits and dental benefits for members of [LEEA]" and resolutions "to establish one or several health, dental, and such other benefit plans which shall be offered to the members of this corporation in Pennsylvania, Ohio and New York states" and to establish "the [LEEA] Benefit Trust and the [LEEA] Accident and

5

Health Plan" effective November 1, 1981. Minutes of Meeting of Oct. 8, 1981, at A110-11. In addition, a review of those minutes of later Board meetings that are provided in the record reveals that discussion at the meetings centered almost exclusively on matters related to the various benefit plans administered by LEEA, including plan amendments, rate and billing adjustments, and collection procedures. In addition, there is no indication in the record that LEEA had any members that were not also participants in the LEEA Plan. Indeed, although "[a]ll proceedings in relation to membership applications [were] secret and confidential," LEEA Amended Bylaws, Art. V, P 2, at A89, there is an implication in the record that membership decisions were based on underwriting considerations.

It is also clear that LEEA and HBKW, the brokeragefirm, were closely interrelated. As we have noted, the idea for LEEA came from an HBKW principal. LEEA's Board of Directors, which conducted all of LEEA's business and affairs, originally consisted of the five principals of HBKW, who were also the incorporators and officers of LEEA. In October 1982, four of the HBKW principals resigned-- although Karle remained as Chairman--and four new employer-member directors joined the Board. However, the bylaws, as amended in December 1982, provided that the four former directors, who remained officers of LEEA, would be "ex-officio members of the Board of Directors by virtue of the independent management functions which they perform for the Corporation . . . . The ex-officio members shall have equal standing and authority with the other members of the Board." LEEA Amended Bylaws, Art. VII, P 1, at A90.

HBKW and LEEA entered into an Administrative Agreement on October 31, 1981, under which LEEA appointed HBKW the Administrative Agent of the LEEA Plan and Benefit Trust. Under the agreement, HBKW received fees from LEEA in exchange for HBKW's maintaining records and processing claims in connection with the LEEA Plans. LEEA business was conducted out of the offices of HBKW, and LEEA and HBKW had the same address. There was no separately designated office space for LEEA within the HBKW offices, and LEEA had no employees during most of its existence.

6

In 1985, LEEA became insolvent, and the Plan and Trust were terminated. This prompted employer–members and employee beneficiaries (and their dependents) of the LEEA Plan to file two suits against HBKW, HBKW's principals, and the officers and directors of LEEA. The complaints, which were consolidated in a single class action, alleged violations of fiduciary duty and other obligations under ERISA and state law breaches of contract, fiduciary duty, and duty of care.

Appellants Western World Insurance Co. and Tudor Insurance Co. (collectively, "Western World") had issued directors' and officers' liability insurance policies to the officers and directors of LEEA. After the lawsuits were filed, Western World filed a declaratory judgment action seeking a declaration that it was not liable under those policies. It relied primarily on a policy exclusion for claims arising under ERISA.[2] This declaratory judgment action was consolidated with the class action for all purposes.

In response to a motion by Western World for summary judgment, the district court entered an order declaring that its ERISA policy exclusion was valid and that the policy did not, therefore, cover claims arising out of ERISA. The court's order did not, however, address whether any of the claims in the class suit were ERISA claims or whether Western World was liable with respect to any of those claims. Nonetheless, the court directed that the declaratory judgment action be closed and that the parties proceed with prosecuting the underlying actions. The district court certified the issue relating to the validity of the ERISA exclusion, the defendants appealed, and we affirmed the district court's decision. We expressly "assume[d] that the district court [would] now promptly address the overarching issue of the applicability of ERISA to the plans which are

_____

2. The insurance policy contains two significant clauses. The first is contained in a section entitled "Exclusions" and states that the policy does not apply to claims "[a]rising out of [ERISA]." A465. The second is found on a separate page entitled "ERISA Liability Exclusion Endorsement," which provides: "It is understood and agreed that the coverage afforded under this policy shall not apply as respects liability imposed upon an insured (or which is imputed to an insured) under [ERISA]." A467.

the subject of the underlying actions against the directors." Western World Ins. Co., Inc. v. Hubbard, No. 96-3698, slip op. at 3 (3d Cir. July 16, 1993) (judgment order).

On remand, Western World argued that the LEEA plan was an "employee welfare benefit plan" ("EWBP") within the meaning of ERISA.3 It also argued, in the alternative, that each member employer's individual plan was an EWBP within the meaning of ERISA. The district court granted partial summary judgment to the officers and directors of LEEA, holding that the LEEA plan was not an EWBP governed by ERISA because it was not "established or maintained by" an employer organization acting in the interests of its members. Over Western World's objection, the class action plaintiffs and defendants reached a settlement agreement. Western World appealed the district court's grant of partial summary judgment. We found that Western World's appeal was not moot, but dismissed for lack of jurisdiction, explaining:

> Absent a Rule 54(b) certification, an order is notfinal and appealable as such unless it disposes of all claims remaining before the court. Here we find no order adjudicating Western World's claim which seeks a declaratory judgment that "the Western World's policy provides no coverage for and is not applicable to any claim, demand, or cause of action arising from or relating to the HBKW litigation." Where cases are consolidated, a judgment on the claims in one consolidated action is not an appealable final order if it does not also adjudicate all claims in the other consolidated action.

Gruber v. Hubbard, Bert, Karle, Weber, Inc., No. 96-3277, slip op. at 16 (3d Cir. July 18, 1997) (not-for-publication opinion). We dismissed the appeal and requested that the court, "before entering a final order, provide an explanation for its apparent rejection of Western World's contention that each employer's individual plan constitutes an `employee welfare benefit plan' and, accordingly, that the class plaintiffs' claims, by operation of the doctrine of complete preemption, can only be ERISA claims." Id. at 17.

_____

3. See 29 U.S.C. S 1002(1).

The district court responded to the jurisdictional defect by amending its May 6, 1994, order to deny Western World's motion for a declaratory judgment that it is not liable for any claims flowing from the HBKW litigation. It explained:

> As the policies issued by Western World contain an ERISA exclusion, the insurer is not liable for any ERISA claims. However, we have determined that the Plan does not fall within the scope of ERISA, and thus non-ERISA claims, for which Western World may indeed be liable, remain very much a part of this action.

D. Ct. Op. at 3. The district court also responded to our request that it explain its apparent rejection of Western World's alternate line of argument. The court first acknowledged that "even where a multi-employer trust is not governed by ERISA, by subscribing to the trust, each individual employer may have established an individual ERISA plan." D. Ct. Op. at 5. The court then stated:

> Western World points to no evidence, however, to support its assertion that the individual plans at issue here are ERISA plans. It states that "the individual employers purchased health insurance for their employees after joining LEEA and agreeing to participate in the Trust. Although Western World claims this is "powerful proof that ERISA governs the individual plans," this assertion is contradicted by the case law. A mere purchase of insurance, although evidence that a plan may exist, is not in and of itself proof that an ERISA plan does exist.

> Western World points to no proof that the individual employers even "purchased" health insurance. Western World simply offers this Court no evidence from which to conclude that the employer members of the LEEA established individual benefit plans within the meaning of ERISA. Accordingly, we will affirm our grant of partial summary judgment . . . and hold that there are no ERISA claims remaining in this litigation.

D. Ct. Op. at 5-6 (citations omitted). Western World appeals the district court's judgment. The class action plaintiffs are the appellees herein.

9

We have jurisdiction over this appeal pursuant to 28 U.S.C. S 1291. We must determine: first, whether the district court properly concluded that the LEEA plan was not an EWBP under ERISA; and, second, whether the court properly concluded that the individual employer-members of LEEA had not established single-employer EWBPs under ERISA.

We exercise plenary review over the district court's grant of partial summary judgment. See Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1297 (3d Cir. 1993). "A motion for summary judgment shall be granted if the court determines `that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Id. (quoting Fed. R. Civ. P. 56(c)).

II.

A. The LEEA Plan

The statutory provisions that determine whether a multi-employer plan is governed by ERISA define an "employee welfare benefit plan" as:

> any plan, fund, or program which was . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . medical, surgical, or hospital care benefits. . . .

29 U.S.C. S 1002(1). An "employer" includes "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." Id. S 1002(5). The question we must resolve, then, is whether the LEEA Plan was "established or maintained" by "a group of employers" acting "indirectly in the interest of " its member employers in relation to the Plan.

10

Congressional commentary, Department of Labor (DOL) advisory opinions, and case law from other circuits applying ERISA to multi-employer plans have interpreted the statute to preclude ERISA coverage of plans established for entrepreneurial purposes. See, e.g., H.R. Rep. No. 1785, 94th Cong., 2d Sess. 48 (1977) ("[P]lans . . . established and maintained by entrepreneurs for the purpose of marketing insurance products or services to others .. . are not established or maintained by the appropriate parties to confer ERISA jurisdiction, nor is the purpose for their establishment or maintenance appropriate to meet the jurisdictional prerequisites of the Act.");4 DOL Op. No. 81-7A, 1981 WL 17728, at *2 (E.R.I.S.A. Jan. 12, 1981) (stating that it is "the Department's position that an organization that functions as a vehicle for insurance entrepreneurs to market insurance products or services, not as a bona fide program to provide benefits to employees, is not an employee benefit plan within the meaning of ERISA"); MDPhysicians & Assoc., Inc. v. State Bd. of Ins., 957 F.2d 178, 185 (5th Cir. 1992) (holding that multi-employer plan sponsored by a physician's association was not an EWBP because association did not act "indirectly in the interest of" members; rather, it was an "entrepreneurial venture" that "acted for itself ").

Giving effect to the intention to exclude entrepreneurial ventures, the cases and advisory opinions have imposed two broad requirements for a multi-employer plan to constitute an EWBP. First, the group of employers that establishes and maintains the plan must be a "bona fide" association of employers "tied by a common economic or representation interest, unrelated to the provision of benefits." Wisconsin Educ. Ass'n Trust v. Iowa State Bd., 804 F.2d 1059, 1063 (8th Cir. 1986); see also Moideen v. Gillespie, 55 F.3d 1478, 1481 (9th Cir. 1995); MDPhysicians, 957 F.2d at 185-86; Credit Managers Ass'n

_____

4. This report has been described as " `virtually conclusive' as to legislative intent." MDPhysicians, 957 F.2d at 184; Hamberlin v. VIP Ins. Trust, 434 F. Supp. 1196, 1199 (D. Ariz. 1977); cf. Sioux Tribe v. United States, 316 U.S. 317, 329 (1942) (describing committee report "made within five years of its passage" as "virtually conclusive as to the significance of th[e] Act" discussed therein).

v. Kennesaw Life & Accident Ins. Co., 809 F.2d 617, 625 (9th Cir. 1987). Second, the employer-members of the organization that sponsors the plan must exercise control, either directly or indirectly, both in form and in substance, over the plan. See DOL Op. No. 96-25A, 1996 WL 634362, at *2-3 (E.R.I.S.A. Oct. 31, 1996) ("[I]t is the Department's view that the employers that participate in a benefit program must, either directly or indirectly, exercise control over the program, both in form and substance, to act as a bona fide employer group or association with respect to the program.").

The district court stated that both of the above factors must be considered in determining whether an organization is acting in the interests of an employer. We agree. The commonality of interest requirement is well-established in the case law, and the control factor has been consistently advanced as a requirement in DOL advisory letters since the early 1980s. See, e.g., DOL Op. No. 83-48A, 1983 WL 22533, at *3 (E.R.I.S.A. Sep. 14, 1983). In addition to the fact that "[t]he Department of Labor's construction of ERISA is entitled to a substantial measure of deference," International Ass'n of Entrepreneurs of Am. Benefit Trust v. Foster, 883 F. Supp. 1050, 1061 (E.D. Va. 1995), the control requirement is a reasonable means of ensuring that the administrators of multi-employer welfare benefit plans in fact act "in the interest of " their employer members. Therefore, we conclude that to qualify as an "employer" for ERISA purposes, an employer group or association must satisfy both the commonality of interest and control requirements.

The district court found that the LEEA Plan satisfied neither of these requirements. It found that control was lacking because the employer members of the Plan's Board of Directors were outnumbered by HBKW principals with "ex officio" Board membership. Hence, the HBKW principals had the power to control the Board, and thus the power to control the Plan. Even though the ex-officio members never voted at meetings, the district court "assume[d] they would have exercised that power had the decisions of the board been contrary to their wishes." D. Ct. Op. (May 6, 1994) at 7. The court also found commonality of interest to be

lacking because "there was no nexus among the individuals benefitted by the Plan and the entity providing those benefits, other than the Plan itself" since LEEA "was comprised of disparate and unaffiliated businesses" who had no relationship prior to the inception of the Plan. Id. at 8.

We find that the district court erred on the control issue but decided the common interests issue correctly. On summary judgment, it was inappropriate for the court to base its conclusion that the HBKW principals controlled the Board on an assumption that they would vote at Board meetings if they so desired. Moreover, viewed in the light most favorable to Western World, the non-moving party, there was evidence in the record to suggest that the LEEA employer members did indirectly control the administration of the Plan through their representation on the Board. For example, the minutes of the Board meetings indicate that the employer members of the Board discussed and voted on many aspects of the day-to-day administration of the Plan, including amendments to the LEEA Plan and rate adjustments, whereas the ex-officio members were only considered "guests" at those meetings. See, e.g., Minutes of 4/25/83 Meeting, at A124. Hence, the court erred in concluding that the employer-members lacked control over the Plan as a matter of law.

Nonetheless, Western World has not established the requisite commonality of interest to survive summary judgment. Courts considering the issue have found that a sufficient bond exists between employers engaged in the same line of business in the same geographical area, see, e.g., Steen v. John Hancock Mutual Life Ins. Co., 106 F.3d 904, 916 (9th Cir. 1997), but they have consistently rejected the contention that heterogenous businesses that share nothing more than a common size and a high regard for the "entrepreneurial spirit" enjoy such a bond, see, e.g., Moideen, 55 F.3d at 1481 (no commonality of interest where membership limited to employers with fewer than 500 employees); International Assoc. of Entrepreneurs, 883 F. Supp. at 1058-59 (no commonality of interest where membership limited to employers sharing "adherence to the principles of entrepreneurial spirit and free enterprise").

13

The LEEA Plan bears greater resemblance to the latter types of organizations than the former.

LEEA membership included such diverse groups as tool and die makers, an extended health care facility, a manufacturer of airplane engine parts, the operator of the local Holiday Inns, local law firms, a manufacturer of office partitions, a local realtor group, a manufacturer of knives, a beer distributor, an automobile dealer, and several social clubs. In short, the only common trait that LEEA employer-members possessed was that they employed fewer than 225 employees. However, common size is not a bona fide organizational relationship. See Smith, 1997 WL 297096 at *4; Moideen, 55 F.3d at 1481. Accordingly, LEEA was not a "bona fide employer organization" that could establish and maintain an EWBP within the meaning of ERISA.5

_____

5. This conclusion is buttressed by consideration of the factors that the DOL has suggested are relevant to the factual determination of whether a group of employers participating in a multi-employer plan is a "bona fide employer association" within the meaning of S 1002(5). They include:

> how members are solicited; who is entitled to participate and who
> actually participates in the association; the process by which the
> association was formed, the purposes for which it was formed, and
> what, if any, were the preexisting relationships of its members;
the
> powers, rights, and privileges of employer members that exist by
> reason of their status as employers; and who actually controls and
> directs the activities and operations of the benefit program.

DOL Op. No. 96-25A, 1996 WL 634362, at *3.

Consideration of the first three factors is particularly instructive in this
case. First, members of LEEA were solicited by salespeople working for HBKW who attempted to sell both participation in the LEEA Plan and other HBKW insurance products. See Karle Dep. of 5/22/86, at A723, 729. Second, the restrictions placed on eligibility membership were few. Membership in LEEA was originally limited to employers with fewer than 150 employees who did business in Northwestern Pennsylvania. However, membership was subsequently extended to employers with up to 225 employees and to those who did business in Northeastern Ohio. Additionally, the bylaws allowed the admission of"associate members" who did not satisfy the membership requirements. Third, there was no preexisting relationship between the employer members of LEEA, and solicitation of new members was based not on appeals to the shared interests of the organization, but on the sale by HBKW employees of participation in the Plan. Moreover, the organization was formed by a commercial organization that hoped to make a profit through the operation of the Plan. Id. at A728.

Therefore, the district court's entry of summary judgment with respect to the LEEA Plan was proper.

B. The Individual Plans

The Department of Labor holds the view that "if an employer adopts for its employees a program of benefits sponsored by a group or association that does not itself constitute an `employer' or an `employee organization,' such an employer or employee organization may have established a separate, single-employer (or single employee organization) employee benefit plan covered by Title I of ERISA." DOL Op. No. 96-25A, 1996 WL 634362, at *3. Western World argues that because the individual employers in this case established single-employer EWBPs, ERISA preempts the plaintiff class members' state law claims.

Although plaintiff-appellees do not explicitly contest the DOL's position, they argue that it is irrelevant whether the individual plans constituted employee welfare benefit plans under ERISA. Appellees are incorrect. As we have previously indicated, if each employer's individual plan constituted an employee welfare benefit plan, then"the class plaintiffs' claims, by operation of the doctrine of complete preemption, can only be ERISA claims." Gruber v. HBKW, No. 96-3277, slip op. at 17 (3d Cir. July 18, 1997).

Turning to the merits, we conclude that the district erred in granting summary judgment. "An employer . . . can establish an ERISA plan rather easily." Credit Managers Ass'n, 809 F.2d at 625. An ERISA plan exists if" `from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.' " Deibler, 973 F.2d at 209. We have stated, moreover, that the crucial factor in determining whether a "plan" has been established is whether the employer has expressed an intention to provide benefits on a regular and long-term basis. Id.

Although the district court correctly observed that an employer's mere purchase of health insurance for its employees "is not in and of itself proof that an ERISA plan

15

does exist," such a purchase does raise a genuine issue of material fact as to the existence of an ERISA plan. D. Ct. Op. at 6. "A number of courts have held that an employer's payment of insurance premiums, standing alone, is substantial evidence of the existence of an ERISA plan." Robinson v. Linomaz, 58 F.3d 365, 368 (8th Cir. 1995) (citing cases from Fourth, Seventh, Ninth, and Eleventh Circuits) (emphasis added). Even the district court itself conceded that a purchase of insurance is "evidence that a plan does exist." D. Ct. Op. at 6.

The district court found, however, that Western World presented "no proof that the individual employers even `purchased' health insurance." D. Ct. Op. at 5-6. Appellee plaintiff class members, likewise, argue that the individual employers did not purchase insurance, that LEEA was not an insurer, and that the employers did not pay premiums to an insurer. Rather, "[t]hey made contributions to the LEEA trustee pursuant to the terms of the LEEA self-funded benefit trust. These contributions were pooled together in a trustee account and disbursed by the trustee to pay eligible medical expenses in accordance with the governing trust documents." Appellee's Br. at 15. This distinction is irrelevant, however. Since the crucial factor is "whether the employer has expressed an intention to provide benefits on a regular and long-term basis," Deibler, 973 F.2d at 209, it does not matter whether the employer did so by "purchasing insurance" or by subscribing to a multi-employer trust. See also 29 U.S.C.S 1002 (employer establishes EWBP "through the purchase of insurance or otherwise") (emphasis added).

We conclude that Western World has raised a genuine issue of material fact regarding whether the individual employer-members of LEEA established employee welfare benefit plans for ERISA purposes. As Western World argues, there was evidence that the individual employer plans satisfied the Deibler test for establishing an ERISA plan because each employee was given a copy of the summary plan description which indicated what benefits were available, which persons were eligible for coverage, the source of financing, and the procedures for receiving benefits. Moreover, it is clear that the individual employers

16

made contributions to the LEEA Plan on behalf of their employees. These contributions alone constituted sufficient evidence of the existence of an ERISA plan to survive summary judgment.

The Ninth Circuit has explained why summary judgment is improper in this situation:

> Even if an employer does no more than arrange for a "group-type insurance program," it can establish an ERISA plan, unless it is a mere advertiser who makes no contributions on behalf of its employees. This possibility should be explored in an appropriate manner before summary judgment is employed. We must remember that the existence of an ERISA plan is a question of fact, to be answered in the light of all the surrounding circumstances from the point of view of a reasonable person.

Credit Managers Ass'n, 809 F.2d at 625. In this case, the individual employers arranged for a "group-type insurance program" by participating in the LEEA Plan. They were not mere advertisers, but rather made contributions to the Plan on behalf of their employees. Therefore, we will reverse the district court's grant of summary judgment on this issue.

CONCLUSION

Because we find that the district court properly concluded that the LEEA plan was not an employee welfare benefit plan under ERISA, we will affirm the district court's grant of summary judgment to the class members on that issue. However, we hold that the court improperly granted summary judgment on the issue of whether the individual employer members of LEEA established single-employer employee welfare benefit plans under ERISA. Accordingly, the judgment of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.

A True Copy:
Teste:

    Clerk of the United States Court of Appeals
    for the Third Circuit

17