NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 15-2813

———————

LOU ANN WOERNER, as the beneficiary of Michael J. Woerner,
Appellant

v.

FRAM GROUP OPERATIONS, LLC; THAT CERTAIN
EMPLOYEE WELFARE BENEFIT PLAN SPONSORED BY FRAM
OPERATIONS GROUP LLC c/o FRAM OPERATIONS GROUP LLC

———————————————————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-12-cv-06648)
District Judge: Stanley R. Chesler

———————————————————

Submitted under Third Circuit LAR 34.1(a)
on June 7, 2016

Before: CHAGARES, KRAUSE, SCIRICA, *Circuit Judges*

(Opinion Filed: August 19, 2016)

———————

OPINION*

———————

KRAUSE, *Circuit Judge*

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Lou Ann Woerner appeals a District Court order granting summary judgment in favor of FRAM[1] on her claim for benefits brought under the civil enforcement provision of the Employee Retirement Income Security Act (ERISA). For the reasons set forth below, we will vacate and remand.

## I.

Mrs. Woerner's husband, Michael Woerner, was diagnosed with brain cancer while working at Honeywell International, Inc. and elected to take disability leave beginning on June 24, 2011. Shortly thereafter, FRAM acquired Mr. Woerner's business unit from Honeywell, making him an employee of the new company.

As part of its acquisition, FRAM decided to offer a CIGNA life insurance plan (hereinafter "FRAM Plan" or "the Plan") to its new employees, and on October 21, 2011, FRAM distributed an email entitled "Message from FRAM Group HR – Benefits Update for FRAM Group Employees" informing employees about the FRAM Plan. J.A. 273-74. The email announced that "in the coming weeks all new plan options and details will be communicated to you." J.A. 273. "Once you receive and review the benefits details, you may elect the plan of your choosing." J.A. 273.

---

[1] We use FRAM to refer collectively to Defendant-Appellees FRAM Group Operations, LLC and That Certain Employee Welfare Benefit Plan Sponsored by FRAM Operations Group LLC.

One week later, on October 28, FRAM sent a follow-up email containing a "brief overview" of the Plan.[2] J.A. 107. Coverage would be provided at the election of the employee, and premiums would be set based on "[the] amount of coverage purchased and [the] age [of the employee or spouse]." J.A. 108. The maximum electable coverage would be equal to the lesser of "5 times [the employee's] base salary" or $1,500,000. J.A. 108. Employees would be permitted to "[p]urchase coverage for [their] spouse[s] in $5,000 increments up to a maximum 50% of [their] coverage amount not to exceed $250,000" and "for [their] children up to a maximum of $20,000." J.A. 108. And employees would be required to complete a health questionnaire and provide evidence of insurability to qualify for coverage in excess of the "[g]uarantee [i]ssue amount" of $350,000 for employees and $50,000 for spouses. J.A. 108. This overview did not, however, contain the key term at issue here—an active-service condition that prescribed that life insurance coverage would not begin until an employee completed one day "performing his or her regular occupation for the Employer on a Full-time basis." J.A. 132.

Mr. Woerner enrolled in the FRAM Plan and selected coverage of $198,000. On December 7, 2011, he received a confirmation statement listing Mrs. Woerner as his

---

[2] In addition to the October 28 email, FRAM sent a subsequent email with instructions on selecting coverage. That email informed employees that open enrollment would run from November 30, 2011 to December 12, 2011, but it contained no additional information regarding the terms of the Plan, such as the active-service condition.

beneficiary and January 1, 2012 as the effective date of coverage and setting premiums at $16.91 per pay period.

The following day, Mrs. Woerner emailed Eric Schueneman, FRAM's Director of Compensation, Benefits & HRIS at FRAM, asking for further information about the Plan. In her email, she requested "a copy of the 2012 Summary Plan Description" (SPD)[3] and inquired about the "guaranteed coverage" amount. J.A. 122. FRAM never responded to these inquiries.

Mr. Woerner passed away on February 24, 2012. It is undisputed that the Woerners did not receive notice of the active-service condition while Mr. Woerner was alive, and were not provided an SPD. The record also includes a number of internal communications within FRAM and emails and documents exchanged between FRAM and CIGNA containing information that was not shared with employees during Mr. Woerner's lifetime. In fact, CIGNA did not deliver a final copy of the SPD to FRAM until March 2012, about a month after Mr. Woerner's death, and the written contract between FRAM and CIGNA was not executed until September 2012, another six months later.

In the interim, in April 2012, Mr. Schueneman sent Mrs. Woerner a copy of the SPD and indicated that Mr. Woerner did not qualify for coverage because he never

---

[3] An SPD is the primary means of disclosing the terms of an employee benefit plan to its participants and beneficiaries. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (stating that the purpose of an SPD is "to communicate . . . the essential information about [a] plan"). The content of SPDs is governed by 29 U.S.C. § 1022 and 29 C.F.R. § 2520.102-3.

returned to active service. Several weeks later, CIGNA officially denied Mrs. Woerner's claim for benefits in a letter that stated the following:

> Michael Woerner last worked on June 23, 2011 and was not in active service on January 1, 2012. The confirmation statement you submitted shows the effective date of his election of Voluntary Group Term Life Insurance under Policy FLX 964429 as January 1, 2012. Policy FLX 964429 requires that an employee be actively at work in order for his coverage to be effective under the Policy.
>
> Therefore, since you have already received payment for Michael Woerner's Basic Group Term Life Insurance [that he had as an employee of Honeywell International] under policy CWL 2000 and his election of Voluntary Group Term Life Insurance under Policy FLX 964429 never became effective, because he was never actively at work from January 1, 2012[,] through his death on February 24, 2012, no Group Term Life Insurance is payable to you under Policy FLX 964429.

J.A. 128.

On June 7, 2012, CIGNA sent a subsequent letter to Mrs. Woerner further explaining the active-service condition and informing her of her right to appeal the denial in writing within 60 days of receiving the denial letter. The letter provided an address and indicated that the appeal could include the reason for the appeal, Mr. Woerner's name and social security number, and documentation that Mr. Woerner returned to active service on or after January 1, 2012.

Mrs. Woerner did not submit a written appeal and instead, on October 22, 2012, filed suit against FRAM in the District of New Jersey raising various claims under ERISA's civil enforcement provision, 29 U.S.C. § 1132. She then filed an amended complaint raising a single claim for recovery of benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). The parties filed cross-motions for summary

5

judgment, which the District Court granted in FRAM's favor, concluding that the active-service condition barred Mrs. Woerner from recovering benefits. *Woerner v. FRAM Grp. Operations*, LLC, No. 12-6648 SRC, 2015 WL 3970199 (D.N.J. June 30, 2015). Mrs. Woerner filed a timely appeal.

## II.

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e), and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment, *Smathers v. Multi–Tool, Inc./Multi–Plastics, Inc. Emp. Health and Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002), which is appropriate only if, viewing the facts in the light most favorable to the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).

## III.

The parties do not dispute that FRAM established an ERISA-governed employee welfare benefit plan, or even that the active-service requirement was part of the Plan in its final form.[4] Rather, the primary issue raised on appeal is what terms were part of the

---

[4] In proceedings before the District Court, the parties stipulated that an ERISA plan, offered by FRAM, existed as of January 1, 2012. The District Court should not have accepted this stipulation as true because the existence of a plan is not a purely factual question but a mixed question of law and fact. *See Montrose Med. Grp. Participating Sav. Plan v. Bulgar*, 243 F.3d 774, 783 (3d Cir. 2001) ("[T]hough the question whether a particular plan is covered by ERISA may not be one of pure law, it is also not a 'purely factual matter' . . . ."). Parties are free to stipulate to the "'surrounding circumstances'" indicating the existence and terms of an insurance plan, *Shaver v. Siemens Corp.*, 670 F.3d 462, 475 (3d Cir. 2012) (quoting *Donovan v. Dillingham*, 688

6

FRAM Plan at the time of Mr. Woerner's death. According to the District Court, the choice we are presented with is necessarily binary: either the terms disclosed to the Woerners prior to Mr. Woerner's death were sufficient to constitute an ERISA plan, such that Mrs. Woerner prevails, or the formal Plan finalized and executed between FRAM and CIGNA well after this date precludes Mrs. Woerner from recovering benefits. The District Court concluded that because the disclosed terms were insufficient to constitute an ERISA plan, the formal FRAM Plan containing the active-service requirement necessarily controlled and FRAM was entitled to summary judgment.

We disagree with this analysis for two reasons. First, the District Court applied the incorrect standard to determine that the disclosures and representations made to employees as of January 1, 2012 could not constitute an ERISA plan. Second, the District Court erred in then resorting to a document that, according to the record, was not even in FRAM's possession until well after Mr. Woerner's death.

As to the first point, the District Court erred in treating the requirements detailed in 29 U.S.C. § 1102(b) as the applicable test for determining whether particular terms can be said to constitute an ERISA plan. ERISA contains an abundance of regulations governing the form and function of employee benefit plans, such as those set forth in § 1102(b). But we have declined to construe an employer's failure to conform to these regulations as defeating employee claims as to the existence of a plan and their

F.2d 1367, 1373 (11th Cir. 1982) (en banc)), but they cannot stipulate to the ultimate legal conclusion that the plan is governed by ERISA.

7

entitlement to benefits. Rather, we have upheld even unwritten plans lacking these requirements "in order not to frustrate the legitimate expectation of employees." *See Frank v. Colt Indus., Inc.*, 910 F.2d 90, 97 (3d Cir. 1990).

We have joined other Circuits in adopting the standard developed by the Eleventh Circuit in *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982) (en banc), "to determine whether informal written or oral communications . . . constitute a plan." *Shaver v. Siemens Corp.*, 670 F.3d 462, 475 (3d Cir. 2012); *see also Deibler v. United Food & Commercial Workers' Local Union 23*, 973 F.2d 206, 209 (3d Cir. 1992). An ERISA plan "is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Shaver*, 670 F.3d at 475 (quoting *Donovan*, 688 F.2d at 1373). In *Gruber v. Hubbard Bert Karle Weber, Inc.*, we agreed with the Ninth Circuit that this standard is not stringent and that "[a]n employer . . . can establish an ERISA plan rather easily." 159 F.3d 780, 789 (3d Cir. 1998) (quoting *Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987)); *see also Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 939 (9th Cir. 2003) ("Very few offers to extend benefits will fail the test laid out in *Donovan,* which requires neither formalities nor elaborate details."). The *Donovan* test does not even require that the factors be satisfied by way of terms made explicit to employees; a plan exists if, from the "surrounding circumstances," such terms can be inferred. *Deibler*, 973 F.2d at 210 (quoting *Donovan*, 688 F.2d at 1373).

8

We cannot accept the District Court's approach to ascertaining the terms of the Plan for a second reason. After concluding that the documents disclosed to the Woerners before Mr. Woerner's death were "too unsubstantial to constitute an ERISA plan," the District Court turned to the provisions of the formal plan finalized and executed after Mr. Woerner's death as "the only terms that [it] ha[d] as a basis for a ruling" on the applicability of the active-service requirement. *Woerner*, 2015 WL 3970199, at *8. This turn cannot be reconciled with our precedent requiring consideration of "all . . . evidence that would indicate the presence or absence of an informal employee benefit plan," such as "internal or distributed documents, oral representations, existence of a fund or account to pay benefits, actual payment of benefits, a deliberate failure to correct known perceptions of a plan's existence, the reasonable understanding of employees, and the intentions of the putative sponsor."[5] *Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Emps.*, 974 F.2d 391, 400 (3d Cir. 1992); *see also Kenney v. Roland*

_____

[5] Mrs. Woerner asserts that *Henglein* offers guidance for ascertaining only the existence of an ERISA plan and not its terms. It would make little sense, however, for a court to rely on the factors detailed in *Henglein* to determine whether a plan exists, only to then conclude that those factors have no bearing on the plan's content. That said, we recognize that there is some tension in our case law as to the significance of an employer's disclosures for purposes of ascertaining the terms of an ERISA plan. As FRAM argues, an employer's failure to properly disclose to its employees an amendment to a formal plan does not itself render the new provisions inoperative and is, indeed, "irrelevant in determining [the employees'] entitlement to benefits under the terms of the . . . plan." *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1170 (3d Cir. 1990). But where, as here, the inquiry is whether a de facto employee benefit plan exists and what it contains, the substance of the communications between the employer and employees and the reasonable employee understandings that result are evidence from which the terms of a plan may be inferred under the *Donovan* test. *See Henglein*, 974 F.2d at 399.

9

*Parson Contracting Corp.*, 28 F.3d 1254, 1258 (D.C. Cir. 1994) (describing distribution of a plan summary and withholding of employee wages as among the "'surrounding circumstances' from which a court—like the employees—could reasonably infer that [the employer] established or maintained a plan subject to ERISA") (quoting 29 U.S.C. § 1002(2)(A)). Moreover, the version of the Plan delivered to and executed by FRAM *after* Mr. Woerner's death cannot provide a basis for ascertaining Mrs. Woerner's benefits simply by virtue of the fact it was eventually finalized, nor does anything in the record support rewarding FRAM's dilatory practices in this manner.[6] *See Butero v.*

---

[6] On this record, we cannot agree with FRAM that Mrs. Woerner failed to exhaust her administrative remedies by filing suit in the District of New Jersey instead of appealing her denial of benefits to CIGNA. Although "[t]he courts of appeals have uniformly required that participants exhaust internal review before bringing a claim for judicial review under § 502(a)(1)(B)," *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 610 (2013), "where a plaintiff reasonably interprets the plan terms not to require exhaustion and, as a result, does not exhaust her administrative remedies, the case may proceed in federal court," *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 180 (2d Cir. 2013); *accord Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1209 (11th Cir. 2003). Here, Mrs. Woerner appears to have reasonably believed she was not bound by the claims procedure, not only because the procedure was not communicated to her until after her husband's death (when she was sent the SDP in March 2012 and the CIGNA denial letter in June 2012), but also because, as far as she knew, it was not part of the Plan under which she contends she is entitled to benefits. *See* 29 C.F.R. § 2560.503–1(*l*) (providing that a claimant "shall be deemed to have exhausted the administrative remedies available *under the plan* and shall be entitled to pursue any available remedies under section 502(a) . . . [if] *the plan* has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim" (emphasis added)); *see also Zupa v. Gen. Elec. Co.*, No. 3:16-CV-00217 (CSH), 2016 WL 3976544, at *3 (D. Conn. July 22, 2016) ("Reference to the plan document when assessing a claimant's exhaustive efforts is necessary . . . because 'exhaustion in the context of ERISA requires only those administrative appeals *provided for in the relevant plan or policy*.'" (quoting *Thomas v. Verizon*, No. 04-5232CV, 2005 WL 3116752, at *1 (2d Cir. Nov. 22, 2005) (in turn quoting *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993)). These are unusual circumstances and we decline to address whether the same result

*Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1214–15 (11th Cir. 1999) (holding that an ERISA plan existed notwithstanding underwriter's refusal to issue life insurance policy months after coverage putatively began, because "whether a plan is 'established' is determined by the *employer's* conduct, not that of any other ERISA entity" and "[the] employer represented to employees that life insurance was available, took payroll deductions to pay premiums, in fact paid premiums, and obviously intended for life insurance to take effect") (citing, among other cases, *Henglein*, 974 F.2d 391; *Donovan*, 688 F.2d 1367)).

\* \* \*

For the foregoing reasons, we will vacate the District Court's grant of summary judgment to FRAM and remand for application of the correct standard as to the existence and terms of the Plan at the time that Mrs. Woerner's benefits, if any, vested.

---

would be warranted in other cases, such as where a plan is in effect and merely amended as to the claims procedure after a claimant is denied benefits but before she commences legal action. *Cf. Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 223 n.10 (2d Cir. 2006) (holding that "an ERISA benefits claimant is not required to exhaust a claims procedure that was adopted only after a suit to recover benefits has been brought" but "express[ing] no view as to whether 29 U.S.C. § 2560.-503-1(l-) applies . . . where an ERISA-compliant claims procedure is adopted after benefits are first sought, but prior to the filing of suit").

11