**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 23-1499, 23-1501, 23-1503, 23-1511, 23-1518, 23-1526, 23-1546, 23-1868 & 23-1869

LUCY DUNNE, REPRESENTATIVE FOR HELENA DUPONT WRIGHT;
JAMES MILLS; JOSEPH WRIGHT; T. KIMBERLY WILLIAMS

v.

ELTON CORPORATION; GREGORY FIELDS;
FIRST REPUBLIC TRUST COMPANY OF DELAWARE LLC;
M.C. DUPONT CLARK EMPLOYEES PENSION TRUST

FIRST REPUBLIC TRUST COMPANY OF DELAWARE LLC;
M.C. DUPONT CLARK EMPLOYEES PENSION TRUST

v.

MARY MILLS ABEL SMITH; CHRISTOPHER T. DUPONT; MICHAEL DUPONT;
JAMES B. WYETH, SOLELY AS EXECUTOR AND PERSONAL
REPRESENTATIVE OF THE ESTATE OF PHYLLIS M. WYETH;
KATHARINE D. GAHAGAN

JAMES B. WYETH, SOLELY AS EXECUTOR AND PERSONAL
REPRESENTATIVE OF THE ESTATE OF PHYLLIS M. WYETH,
Appellant in 23-1499

LUCY DUNNE,
Appellant in 23-1501

MARY MILLS ABEL SMITH; KATHARINE D. GAHAGAN,
Appellants in 23-1503

ELTON CORPORATION,
Appellant in 23-1511

CHRISTOPHER T. DUPONT,
Appellant in 23-1518

FIRST REPUBLIC TRUST COMPANY OF DELAWARE LLC,
Appellant in 23-1526 & 23-1868

JAMES MILLS,
Appellant in 23-1546

LUCY DUNNE, REPRESENTATIVE FOR HELENA DUPONT WRIGHT;
JAMES MILLS; MARY MILLS ABEL SMITH; CHRISTOPHER T. DUPONT;
JAMES B. WYETH, SOLELY AS EXECUTOR AND PERSONAL
REPRESENTATIVE OF THE ESTATE OF PHYLLIS M. WYETH;
KATHARINE D. GAHAGAN,
Appellants in 23-1869

---

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-17-cv-00286)
District Judge:  Honorable Joseph F. Bataillon

---

Argued July 9, 2024

Before:  SHWARTZ, PHIPPS, and MONTGOMERY-REEVES, *Circuit Judges*.

(Opinion filed: September 18, 2024)

Margherita A. Capolino
Caroline English
Pascal F. Naples
ArentFox Schiff
1717 K Street NW
Washington, DC 20006
        *Counsel for Plaintiff-Appellee James Mills*

Elizabeth Hopkins **[ARGUED]**
Susan L. Meter
Kantor & Kantor
9301 Corbin Avenue, Suite 1400
Northridge, CA 91324

Teresa Renaker
Kristen G. Scott
Renaker Scott
505 Montgomery Street, Suite 1125
San Francisco, CA 94111
      *Counsel for Plaintiff-Appellee T. Kimberly Williams*

April C. Ishak
AC Ishak Law
224 N Washington Street
Havre de Grace, MD 21078
      *Counsel for Third Party-Appellee Lucy Dunne, representative for Helena duPont*
      *Wright*

Curtis J. Crowther
Robinson & Cole
1201 N Market Street, Suite 1406
Wilmington, DE 19801

Linda L. Morkan
Robinson & Cole
280 Trumbull Street
One Commercial Plaza
Hartford, CT 06103

Timothy J. Snyder
Young Conaway Stargatt & Taylor
1000 N King Street
Rodney Square
Wilmington, DE 19801
      *Counsel for Defendant-Appellee Elton Corp*

Melissa D. Hill
Morgan Lewis & Bockius
101 Park Avenue
New York, NY 10178

Brian M. Killian **[ARGUED]**
James D. Nelson
Morgan Lewis & Bockius
1111 Pennsylvania Avenue NW, Suite 800 North
Washington, DC 20004

*Counsel for Defendant-Appellee First Republic Trust Co of Delaware LLC*

Myra Benjamin
Nixon Peabody
799 9th Street NW, Suite 500
Washington, DC 20001

Charles M. Dyke
Nixon Peabody
One Embarcadero Center, 32nd Floor
San Francisco, CA 94111

David G. Holmes
Christopher P. Simon
Michael L. Vild
Cross & Simon
1105 N Market Street, Suite 901
Wilmington, DE 19899
　　　*Counsel for Third Party-Appellees Mary Mills Abel-Smith and Katherine D. Gahagan*

Russell L. Hirschhorn
Proskauer Rose
11 Times Square
New York, NY 10036

John E. Roberts
Proskauer Rose
One International Place
Boston, MA 02110

Jennifer C. Wasson
Potter Anderson & Corroon
1313 N Market Street, 6th Floor
Wilmington, DE 19801
　　　*Counsel for Christopher T. duPont*

Anthony F. Shelley **[ARGUED]**
Theresa S. Gee
Miller & Chevalier
900 16th Street NW, Suite 900
Washington, DC 20006

C. Scott Reese
Cooch & Taylor
1007 N Orange Street
The Nemours Building, Suite 1120
Wilmington, DE 19801
> *Counsel for James B. Wyeth, solely as executor and personal representative of the estate of Phyllis M. Wyeth*

---

OPINION[*]

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

MONTGOMERY-REEVES, *Circuit Judge*.

Generosity can be costly. In the 1940s, the matriarch of the duPont family, Mary Chichester duPont,[1] established a trust (the "Trust") to pay pensions to certain domestic employees who worked for Mary, her children, or her grandchildren. Mary funded the Trust with a sizeable grant of stock. But the cost of paying the pensions has ballooned over the decades, and the Trust is now severely underfunded.

In 2016, T. Kimberly Williams—an employee of Helena duPont Wright, one of the Grandchildren[2]—filed a lawsuit alleging that the Trust is an employee benefit plan covered by the Employee Retirement and Income Security Act of 1974 ("ERISA"). Among other things, Williams alleged that the current trustee, First Republic Trust Company of Delaware, LLC ("First Republic"); the former trustee, Elton Corporation ("Elton Corp."); and the Grandchildren (collectively, "Appellants") are liable under ERISA for the Trust's underfunding.

Appellants fought every aspect of the lawsuit, including Williams's constitutional standing to sue and whether ERISA applies to the Trust. At summary judgment, the

---

[1] For clarity, this Opinion refers to Mary Chichester duPont using her first name. We mean no disrespect.

[2] "Grandchildren" refers to the six grandchildren of Mary who are parties to these consolidated appeals: Wright, substituted and represented by her attorney-in-fact, Lucy Dunne; James Mills; Mary Mills Abel-Smith; Christopher T. duPont; the estate of Phyllis M. Wyeth, represented by its executor, James B. Wyeth; and Katharine D. Gahagan.

For clarity, this Opinion refers to Christopher T. duPont using his first name. Again, we mean no disrespect.

District Court held that Williams has Article III standing and that the Trust is an employee benefit plan covered by ERISA. Following a bench trial, the District Court determined that Appellants violated ERISA; found them jointly and severally liable for the Trust's underfunding; and appointed a special master to serve as trustee. This appeal followed.

For the reasons explained below, we hold that the District Court correctly determined that Williams has Article III standing, but the District Court erred in holding that ERISA's coverage provision is triggered on the facts of this case. Thus, we will (1) affirm-in-part and reverse-in-part the District Court's judgment and (2) vacate the District Court's order appointing a special master.

## I.    BACKGROUND

### A.    The Trust

In 1947, Mary established the Trust to pay pensions to certain employees who worked for Mary, her children, or her grandchildren.[3] Eligible employees were entitled to an annuity equal to a percentage of the annual compensation that they earned upon reaching the age of 65 or otherwise becoming eligible for a benefit. Mary funded the Trust with shares of stock in a holding company that ultimately merged into the eponymous duPont Company.

---

[3] The Grandchildren were minor children—or not yet born—when Mary established the Trust.

Mary recorded her intent in a trust document (the "Trust Document"). Among other things, the Trust Document named three of Mary's children as the initial trustees and empowered the current trustees (or trustee) to pick their successors (or successor). The Trust Document also vested the trustees (or trustee) with exclusive powers over the Trust and its assets.

The Trust—which is irrevocable—automatically terminates upon the earlier of (1) twenty years after the death of Mary's last surviving grandchild who also was alive when Mary executed the Trust, or (2) whenever the Trust's assets are exhausted. Benefits stop if the Trust ends.

### B.    Operation of the Trust

During most of the years relevant to this appeal, the trustee was Elton Corp., an entity wholly owned by Mary's child, Felix duPont, and then by his heirs. While Elton Corp. was the trustee, the relevant duPonts—including the Grandchildren—generally were "responsible for notifying Elton Corp. of employees who might be eligible to receive benefits under the [T]rust." *Wright v. Elton Corp.*, C.A. No. 17-286, 2023 WL 1112022, at *4 (D. Del. Jan. 25, 2023) (hereinafter, "Post-Trial Op. *_"). "After receiving a letter from [a relevant duPont]," Elton Corp. would "evaluate[] the information to determine whether it agreed that the submitted employee was eligible for benefits" and "confirm" that determination "in writing to the employee." *Id.* Elton Corp.

8

has the power to "deci[de] . . . how to interpret the [T]rust [Document]."[4]  And Elton

Corp. sometimes interpreted the Trust Document in a manner that may have been

contrary to the pecuniary interests of some of the relevant duPonts, such as by

"interpret[ing] the [T]rust [Document] not to include employees of any corporate entity

that was [engaged in a] for-profit business or profit-making activity."  *Id.*

The Grandchildren's connection to the Trust grew even more tenuous when First

Republic succeeded Elton Corp. as the trustee in 2015.  While acting as trustee, "First

Republic ma[de] all determinations related to the trust administration."  *Id.* at *5.  And

"no other person or entity . . . ha[d] oversight over First Republic's administration of the

[Trust]."  *Id.*  Indeed, "First Republic d[id] not communicate with the [relevant duPonts]

at all" while administering the Trust, "hav[ing] determined that [the individual duPonts]

[were] not interested parties and h[e]ld no power under the [T]rust [D]ocument to give

any input or direction for trust administration purposes."  *Id.*

Except for Christopher,[5] each Grandchild had at least one employee who received,

was eligible to receive, or was promised a pension under the Trust.  The Trust did not

---

[4] Post-Trial Op. *5.  While Elton Corp. was the trustee, it appears that eligible employees could and did contact Elton Corp. directly to request benefits under the Trust, without the involvement of a Grandchild or other relevant duPont.

[5] When discussing the Trust's solvency, the District Court stated, "The record shows that each of [the Grandchildren] had or have employees who are receiving pensions, have been chosen to receive a pension in the future, or are entitled to receive pensions now or in the future."  Post-Trial Op. *17.  There does not appear to be any dispute, however, that one of the Grandchildren, Christopher, did not personally employ anyone who received, was eligible to receive, or was promised a pension under the Trust.  And while the District Court held that Christopher might be liable because he partially owns Elton

9

maintain separate accounts for each beneficiary or employer and relied on a common pool of assets to pay benefits. At various times, the Grandchildren received "pension trust financial statements," *id.* at *4; "contemplated the possibility of correcting 'whatever flaws may exist' in the [T]rust, including [by] making contributions to the [Trust]," *id.* at *7; and participated in decisions about selecting a successor trustee to Elton Corp. But "none of the [G]randchildren were ever appointed as trustees of the [T]rust," *id.* at *4, or made any contributions to the Trust.

"Employees were not necessarily told about the existence of the [T]rust or their potential eligibility for benefits under the [T]rust." *Id.* Indeed, one Grandchild—Wright—does not appear to have realized until approximately 2014 that her employees might be eligible for benefits under the Trust.

---

Corp., neither the District Court's post-trial opinion nor Williams (1) suggests that Christopher and Elton Corp. are or were members of a controlled group or (2) otherwise explains how *Elton Corp.'s* employment of a beneficiary can be imputed to Christopher. Thus, the record contains no evidence that Christopher personally was an employer for ERISA purposes in relation to the Trust. And a factual finding to the contrary would be clearly erroneous. *B. S. M. v. Upper Darby Sch. Dist.*, 103 F.4th 956, 962–63 (3d Cir. 2024) ("A finding of fact is clearly erroneous when, after reviewing the evidence, the court of appeals is left with a definite and firm conviction that a mistake has been committed." (quoting *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004))).

## C. Insolvency of the Trust[6]

Mary funded the Trust with a grant of stock in the 1940s. No contributions have been made since. And the cost of paying the pensions mushroomed over the decades. As of 2022, the Trust had assets of $2.7 million to cover estimated liabilities with a present value of $38 million. "The [Trust] today lacks sufficient assets to pay the benefits it currently owes to vested participants over age 65." *Id.* at *17 n.7. And if the Trust were to "place[] in pay status all the participants who are currently entitled to receive pensions, . . . it w[ould] immediately exhaust all its current assets." *Id.*

## D. Procedural History

In 2016, Wright; Williams; James Mills, one of the Grandchildren; and Joseph Wright,[7] an employee of Mills, filed the operative complaint (the "Complaint"). The Complaint named as Defendants Elton Corp., First Republic, and the Trust.[8] Broadly speaking, the Complaint sought (1) a declaratory judgment confirming that the Trust is an employee benefit plan covered by ERISA; (2) prospective relief to bring the Trust into compliance with ERISA; and (3) retrospective relief for alleged violations of ERISA.

---

[6] The District Court's factual findings related to insolvency presumed that the Trust is a defined-benefit plan covered by ERISA. As explained below, that presumption was incorrect.

[7] Joseph Wright (who has no relation to Helena duPont Wright) died while this case was pending and is not a party to this appeal. References to "Wright" herein refer to Helena duPont Wright, not Joseph Wright.

[8] The Complaint also named as a Defendant Gregory Fields, an Elton Corp. employee. The District Court dismissed Fields from this case. The Parties do not appeal his dismissal.

11

First Republic filed counterclaims against Wright and Mills and third-party claims against the remaining Grandchildren. Those claims sought to compel the Grandchildren to fund the Trust if the District Court were to hold that the Trust is an employee benefit plan covered by ERISA.

After First Republic filed its claims, Williams sought leave to file an amended complaint that, among other things, would have realigned the parties to name the Grandchildren as Defendants. The District Court denied the request, explaining that the District Court could achieve the same result by adjusting the order of proof. Wright and Mills eventually dismissed their claims, effectively aligning themselves with the other Grandchildren as Third-Party Defendants.

At summary judgment, the District Court held that the Trust is an employee benefit plan covered by ERISA, and that Williams has Article III standing to sue. Post-trial, the District Court concluded that First Republic, Elton Corp., and each of the Grandchildren violated ERISA; found them jointly and severally liable for the Trust's underfunding; and appointed a special master to serve as trustee.

Several Grandchildren sought and obtained the District Court's permission to file an interlocutory appeal under 28 U.S.C. § 1292(b) before the special master completed his work and the District Court entered a final judgment. This Court accepted the interlocutory appeal and consolidated separate appeals filed by Elton Corp., First Republic, and the other Grandchildren, respectively. We now resolve those appeals.

12

## II. DISCUSSION[9]

This appeal presents two threshold questions: Does Williams have standing to sue under Article III of the Constitution? If so, has Williams shown that she participates in an employee benefit plan covered by ERISA? We take both questions below.

### A. Article III Jurisdiction[10]

We begin, as we must, with jurisdiction. *See, e.g.*, *Hamilton v. Bromley*, 862 F.3d 329, 334 (3d Cir. 2017) ("Article III jurisdiction is always an antecedent question." (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998))). Because Article III of the Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies,'" Williams must satisfy "the irreducible constitutional minimum of standing" to bring this suit. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992). To establish constitutional standing, Williams must show three things:

1. Williams "suffered an injury in fact that is concrete, particularized, and actual or imminent";

2. Appellants "caused" Williams's injury; and

---

[9] The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331.

We have appellate jurisdiction under 28 U.S.C. § 1292(b) because each issue that the Parties raise on appeal is "fairly included within" the District Court's post-trial order. *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) (citations omitted). And "[w]e always have jurisdiction to determine our own jurisdiction[.]" *Janssen Prods., L.P. v. eVenus Pharms. Lab'ys Inc.*, 85 F.4th 147, 150 (3d Cir. 2023) (citing *United States v. Kwasnik*, 55 F.4th 212, 215 (3d Cir. 2022)).

[10] "We exercise de novo review over [the] [D]istrict [C]ourt's legal conclusions related to standing and review the factual elements underlying that determination for clear error." *Perelman v. Perelman*, 793 F.3d 368, 373 (3d Cir. 2015) (citing *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 414 (3d Cir. 2013)).

3.  the "judicial relief" that Williams "request[s]" "would likely . . . redress" her injury.

*Thole v. U. S. Bank N.A.*, 590 U.S. 538, 540 (2020) (cleaned up) (citing *Lujan*, 504 U.S. at 560–61).

Appellants raise two challenges to Williams's Article III standing.  First, the Grandchildren argue that even if we assume for the sake of argument that ERISA applies to the Trust, Williams would not have standing to sue the Grandchildren for whom she did not work because the Trust could create—at most—a separate single-employer plan for each Grandchild.[11]  And Williams lacks constitutional standing to bring claims under ERISA against employers for whom she did not work about employee benefit plans in which she did not participate.  Second, Elton Corp. argues that Williams has not shown injury because she does not allege that the Trust has failed to pay Williams any benefits currently due, and the record contains no evidence that the Grandchildren would be unable to fund the Trust if ordered to do so.  We address each argument below.

---

[11] For a discussion of single-employer plans, *see infra* Section II.B.1.

### 1. Standing to Sue All Employers[12]

The Grandchildren argue that the only Grandchild whom Williams has standing to sue is her employer, Wright.[13] According to the Grandchildren, the Trust creates—at most—a separate "single-employer ERISA plan[]" for each Grandchild. Grandchildren Opening Br. 36. Williams "could suffer no injury from ERISA plans in which she did not participate and from the employers who sponsor them and for whom she did not work[,]" the Grandchildren assert. *Id.* So "it follows that Williams lacks constitutional standing to sue the Grandchildren who are not her employer." *Id.*

---

[12] The Grandchildren do not challenge Williams's prudential or statutory standing. *See generally Leuthner v. Blue Cross & Blue Shield of Ne. Pa.*, 454 F.3d 120, 125 (3d Cir. 2006) ("To bring a civil action under ERISA, a plaintiff must have constitutional, prudential, and statutory standing.").

First Republic makes a passing reference to Williams's statutory standing to sue the Grandchildren besides Wright if the Trust is not a multiple-employer plan. This issue is best addressed when analyzing ERISA coverage because whether ERISA applies to the Trust logically is antecedent to whether Williams is a "participant" in an employee benefit plan under ERISA § 502(a), 29 U.S.C. § 1132(a). The case law is not clear about if statutory standing is jurisdictional under ERISA. *Compare Miller v. Rite Aid Corp.*, 334 F.3d 335, 345 (3d Cir. 2003) (holding that a court lacks jurisdiction unless plaintiff proves statutory standing), *with N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015) (holding that a defendant in an ERISA case properly filed a motion to dismiss for lack of statutory standing under Federal Rule of Civil Procedure 12(b)(6)). Regardless, we may take the threshold issues of statutory standing and ERISA coverage in our preferred order because statutory standing does not implicate this Court's constitutional jurisdiction under Article III. *See generally Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 294–95 (3d Cir. 2007) (discussing the differences between Article III, prudential, and statutory standing).

[13] Wright is the only Grandchild who has employed Williams.

15

This argument fails for two reasons. First, Williams consistently has alleged that the Trust is one single-employer plan covering eligible employees of the relevant members of the duPont family (*i.e.*, a multiple-employer plan).[14] That premise might be false. *See infra* Section II.B.1. But we must assume that it is true when analyzing Article III standing.[15] And if the Trust is a multiple-employer plan, Williams would have Article III standing to sue each of the Grandchildren because Williams alleges that the

---

[14] For a discussion of multiple-employer plans, *see infra* Section II.B.1.

[15] *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 162 (3d Cir. 2017) ("To maintain th[e] fundamental separation between standing and merits . . . , we assume for the purposes of our standing inquiry that a plaintiff has stated valid legal claims." (citing *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003))); *FEC v. Cruz*, 596 U.S. 289, 298 (2022) ("For standing purposes, we accept as valid the merits of [the plaintiff's] legal claims . . . ." (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975))); *see also Falcone v. Dickstein*, 92 F.4th 193, 203 (3d Cir. 2024) ("[W]e must not 'confuse weakness on the merits with absence of Article III standing[.]'" (quoting *Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015))); *Warth*, 422 U.S. at 500 ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal[.]" (citing *Flast v. Cohen*, 392 U.S. 83, 99 (1968))).

Grandchildren breached statutory duties that they allegedly owed to that purported multiple-employer plan as employers,[16] fiduciaries, and parties-in-interest.[17]

Second, even if the Trust is a collection of single-employer plans, Williams alleged that each Grandchild harmed Williams's purported plan by depleting the Trust's assets, in violation of ERISA. Again, that contention might be false. But we must assume that it is true when analyzing Article III standing. *See, e.g.*, *Cottrell*, 874 F.3d at 162. And if the Grandchildren harmed the Trust, they necessarily harmed the purported single-employer plan in which Williams participates, as the Trust uses a common pool of assets to pay benefits.

Accordingly, we hold that Williams has Article III standing to sue each of the Grandchildren.

---

[16] As noted above, the record contains no evidence that Christopher personally employed anyone who received, was entitled to receive, or was promised a benefit under the Trust. This does not mean that Williams lacks Article III standing to sue Christopher, however, as Williams alleges that Christopher somehow breached fiduciary duties that he allegedly owed to the purported multiple-employer plan through his role as an owner and officer of Elton Corp., a corporate trustee tasked with administering the Trust. *But see Confer v. Custom Eng'g Co.*, 952 F.2d 34, 37 (3d Cir. 1991) ("[W]hen an ERISA plan names a corporation as a fiduciary, the officers who exercise discretion on behalf of that corporation are not fiduciaries . . . unless it can be shown that these officers have *individual* discretionary roles as to plan administration.").

The same logic applies if we assume that the Trust is a collection of single-employer plans.

[17] We express no view on whether ERISA allows participants in a multiple-employer plan to bring statutory claims against employers for whom they did not work or how such claims would be analyzed.

### 2. Injury

As noted above, Williams must show that "she [has] suffered an injury in fact that is concrete, particularized, and actual or imminent" to establish standing to sue under Article III of the Constitution. *Thole*, 590 U.S. at 540 (citing *Lujan*, 504 U.S. at 560–61). Elton Corp. argues that Williams has not shown injury for two related reasons. First, because Williams is not yet eligible to receive a pension under the Trust, Elton Corp. asserts that she "did not, and cannot, allege the existence of an actual injury in fact," Elton Corp. Opening Br. 33, as the Trust has not failed to pay Williams any benefits that she currently is owed.[18]

Second, Elton Corp. argues that Williams cannot "establish an injury by reference to" the Trust's alleged insolvency because she has "never even suggested, much less

---

[18] Elton Corp. also suggests that Williams failed to adequately allege injury because her Complaint alleges that "Williams was 'currently uncertain' as to her entitlement to pension benefits under the Trust." Elton Corp. Opening Br. 32 n.17 (quoting J.A. 254 ¶ 65 (Second Am. Compl.)). This argument rests on a cramped reading of the Complaint. The relevant paragraph from the Complaint alleges that Williams was "currently uncertain as to *exactly how much* [she] [was] entitled to receive in pension benefits under [the Trust], and *when* [she] [will be] eligible to receive [her benefits] . . . because [Appellants] failed to provide plan communications and disclosures mandated by ERISA." J.A. 254 ¶ 65 (emphases added). Even if those allegations reveal some certainty about the precise details of Williams's purported pension, Williams squarely alleges in the Complaint that she is "entitled to benefits under the [Trust]." J.A. 246 ¶ 40. Thus, the Complaint leaves no doubt that Williams alleges that she is entitled to receive a pension from the Trust.

Moreover, Williams hardly can be faulted for lacking information—like the precise amount or timing of her purported pension—that Appellant allegedly failed to disclose despite having an alleged statutory obligation to do so under ERISA. *See generally* ERISA §§ 101–11, 29 U.S.C. §§ 1021–31 (imposing various reporting and disclosure obligations on employee benefit plans subject to ERISA).

proved, that the [Grandchildren] would be unable to fully fund the Trust if ordered to do so." *Id.* at 34, 36. Thus, even if the Trust is insolvent, Elton Corp. asserts that the risk of default is too remote to establish injury unless the Grandchildren—as purported participating employers and fiduciaries—would be unable to cover the shortfall and pay pensioners.

Elton Corp. principally relies on two cases to support this argument: The Supreme Court's decision in *Thole*, which held that participants in a defined-benefit pension plan[19] lacked "concrete stake[s] in [a] lawsuit" because they "ha[d] received all of their monthly benefit payments so far, and the outcome of [the] suit would not affect their future benefit payments." 590 U.S. at 541. And this Court's decision in *Perelman*, 793 F.3d at 374–75, which held that a participant in a defined-benefit plan lacked Article III standing because he had "received all distributions under the [p]lan to which he was entitled" and offered an "entirely speculative" "risk of default" to show injury.

Both cases are distinguishable. Unlike *Thole*, the outcome of this suit likely would "affect [Williams's] future benefit payments" given the Trust's present insolvency. 590 U.S. at 541. And unlike *Perelman*, Williams offers more than speculation to show that the Trust presently is insolvent. *See* 793 F.3d at 374–75.

---

[19] Defined-benefit plans promise "retirees . . . a fixed payment each month" that "do[es] not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Thole*, 590 U.S. at 540. There is no dispute that if the Trust is a pension plan under ERISA, that purported plan would be a defined-benefit plan.

The District Court found that the Trust would "immediately exhaust all its current assets" if it "place[d] in pay status all the participants who are currently entitled to receive pensions." Post-Trial Op. *17 n.7. The District Court also found that the Grandchildren "made calculated decisions" not to fund the Trust despite receiving warnings that the Trust was underfunded and might be subject to ERISA's funding requirements.[20] These facts suffice to show injury under Article III. The Trust does not have sufficient assets to meet its current obligations. It is reasonable to infer that the Grandchildren will not fund the Trust without judicial intervention given the Grandchildren's repeated refusals to do so. And the Trust automatically will terminate— and stop paying benefits—when its accounts run dry.

Under these alleged circumstances, Williams has a concrete and particularized stake in this lawsuit because she has shown that the Trust likely will not pay her full pension without judicial intervention.[21] And Williams has established a non-speculative fear that the Trust's failure is imminent given that the Trust allegedly is insolvent today.[22]

---

[20] Post-Trial Op. *17. For purposes of analyzing Article III standing, we must assume that the Grandchildren had a statutory obligation to fund the Trust under ERISA. *See, e.g.*, *Cottrell*, 874 F.3d at 162.

[21] *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (An injury is "concrete" if it is "real and not abstract"; and an injury is "particularized" if it "affect[s] 'the plaintiff in a personal and individual way.'" (first quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021); and then quoting *Lujan*, 504 U.S. at 560 n.1)).

[22] *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) ("Our cases do not uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about. In some instances, we have found standing based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably

20

Thus, neither *Thole* nor *Perelman* compel the conclusion that Williams has failed to show injury. And we are satisfied that Williams has shown an injury-in-fact sufficient to invoke this Court's jurisdiction under Article III of the Constitution.[23]

---

incur costs to mitigate or avoid that harm." (collecting cases)); *Cottrell*, 874 F.3d at 168 (holding that the actual-or-imminent "component of the injury-in-fact is designed to separate those plaintiffs who have alleged that they have been or will in fact be perceptibly harmed by the challenged defendants' action from those who claim only that they can imagine circumstances in which they could be affected by the defendant's action" (cleaned up) (quoting *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 688–89 (1973))).

[23] The majority opinion in *Thole* suggested that participants in a defined-benefit plan must show "that . . . mismanagement of [a] plan substantially increased the risk that [a] plan *and [its sponsoring] employer* would fail and be unable to pay the plaintiffs' future pension benefits" to establish Article III injury based on fear of default. 590 U.S. at 546 (emphasis added). That suggestion was dictum, however, because "the plaintiffs d[id] not assert that theory of standing." *Id.*

Moreover, unlike the detailed allegations and factual findings of plan insolvency here, the plaintiffs in *Thole* relied on "bare allegation[s] of plan underfunding" to establish standing. *Id.* Indeed, the plan in *Thole* "became overfunded" "[d]uring the litigation," meaning that "there was more money in the [p]lan than was needed to meet its obligations." *Thole v. U.S. Bank, Nat'l Ass'n*, 873 F.3d 617, 622 (8th Cir. 2017), *aff'd*, 590 U.S. 538. That development might have had more to do with mootness than standing. *See Hartnett v. Pa. St. Educ. Ass'n*, 963 F.3d 301, 305 (3d Cir. 2020) ("At the start of litigation, the burden rests on the plaintiff . . . to show its standing to sue. . . . But once the plaintiff shows standing at the outset, she need not keep doing so throughout the lawsuit. Instead, the burden shifts" to "the defendant (or any party)" to show "that some development has mooted the case[.]" (first citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016); and then citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000))). But this Court's opinion in *Perelman* relied on similar evidence of plan solvency to hold that the plaintiff's concern of non-payment was too speculative from the outset of litigation to establish injury. 793 F.3d at 375 ("[T]he evidence is undisputed that . . . , under a valuation method approved by Congress, the [p]lan was appropriately funded, and [the sponsoring employer] had no obligation to make further contributions to stabilize the [p]lan's finances. Under the circumstances,

21

## B. ERISA Coverage[24]

Having assured our jurisdiction under Article III, we reach the next threshold question: is the Trust an employee benefit plan covered by ERISA? Subject to some matters irrelevant here,[25] ERISA "appl[ies] to any employee benefit plan if it is established or maintained by any employer engaged in commerce or in any industry or activity affecting commerce." ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1) (cleaned up).

---

[plaintiff's] allegation that the [p]lan is nonetheless at risk of default is entirely speculative." (citing *David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013))).

If evidence that a plan is solvent helps show that injury is absent, then evidence that a plan is insolvent helps show that injury is present. And Williams adequately has shown that the Trust is insolvent—and likely will default on its alleged obligation to Williams— for the reasons provided above.

[24] "In an appeal from an ERISA bench trial, we review findings of fact for clear error but have plenary review over the District Court's conclusions of law." *Vitale v. Latrobe Area Hosp.*, 420 F.3d 278, 281 (3d Cir. 2005) (citing *Kosiba v. Merck & Co.*, 384 F.3d 58, 64 (3d Cir. 2004)).

Appellants do not challenge the District Court's factual findings related to ERISA coverage. Thus, whether the District Court's factual findings can show that the Trust is an employee benefit plan (or plans) covered by ERISA presents a mixed question of fact and law subject to plenary review. *See, e.g.*, *McCann v. Unum Provident*, 907 F.3d 130, 142 n.13 (3d Cir. 2018) (citations omitted) (holding that the district court's application of a regulatory safe-harbor to the facts presented mixed questions of fact and law subject to de novo review); *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) ("When the factual circumstances are undisputed, . . . whether the facts suffice to demonstrate the existence of a plan as defined by ERISA is a question of law to be reviewed de novo." (italics omitted) (citing *Peckham v. Gem State Mut.*, 964 F.2d 1043, 1047 n.5 (10th Cir. 1992))).

[25] Williams does not suggest that the Trust was established or maintained "by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce." ERISA § 4(a)(2), 29 U.S.C. § 1003(a)(2).

The Parties dispute whether the Trust was established or maintained by an employer; and, if so, whether that employer was engaged in commerce or in an industry or activity affecting commerce. To answer those questions, we must identify the relevant employer (or employers). And to do that, we must decide whether it is possible that Williams participates in a multiple-employer plan covering all employees eligible to receive a pension under the Trust. If so, our analysis of ERISA's coverage provision may need to consider all of the Grandchildren's conduct and activities, as each Grandchild— besides Christopher, who did not personally employ any beneficiaries of the Trust— could be an employer with respect to that purported multiple-employer plan. On the other hand, if Williams cannot be participating in a multiple-employer plan, our analysis focuses on Wright, the only Grandchild who employed Williams.

We begin with the question of whether the Trust could be a multiple-employer plan and then address ERISA coverage.

### 1.	Multiple-Employer Plan

Broadly speaking, ERISA recognizes two types of employee benefit plans: multiemployer plans and single-employer plans. A multiemployer plan is "a plan (i) to which more than one employer is required to contribute, (ii) which is maintained pursuant to one or more collective bargaining agreements . . . , and (iii) which satisfies such other requirements as the Secretary [of Labor] may prescribe by regulation." ERISA § 3(37)(A)(i)–(iii), 29 U.S.C. § 1002(37)(A)(i)–(iii). All other employee benefit plans are single-employer plans. ERISA § 3(41), 29 U.S.C. § 1002(41) ("The term 'single-employer plan' means an employee benefit plan other than a multiemployer plan.").

23

No one suggests that the Trust is a multiemployer plan.  Accordingly, if the Trust is an employee benefit plan under ERISA, it must be a single-employer plan.

Common sense might suggest that *single*-employer plans belong to one employer.  But things are not so simple.  Congress defined "employer" to include "a group or association of employers acting for an employer" "in relation to an employee benefit plan."  ERISA § 3(5), 29 U.S.C. § 1002(5).[26]  Thus, ERISA expressly contemplates the possibility that more than one employer may band together to establish or maintain a single-employer plan.

Congress did not provide a dedicated defined term for such plans (*i.e.*, single-employer plans established or maintained by more than one employer).[27]  *See* ERISA § 3, 29 U.S.C. § 1002.  Courts, regulators, and practitioners use the term "multiple-employer plan" to distinguish these collective plans from single-employer plans established or maintained by one employer.[28]

---

[26] The full definition is as follows, "The term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity."  ERISA § 3(5), 29 U.S.C. § 1002(5).

[27] A handful of ERISA provisions not at issue here refer to "multiple employer plans," but they do not define that term.  *See, e.g.*, ERISA §§ 204(g)(4)(B), 210, 29 U.S.C. §§ 1054(g)(4)(B), 1060.

[28] *See, e.g.*, *Girl Scouts of Middle Tenn., Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 416–17 (6th Cir. 2014) ("The [p]lan is considered a multiple-employer plan under ERISA[] because multiple, separate and independent corporations participate in the [p]lan, but it is not maintained pursuant to a collective bargaining agreement.  Therefore, the [p]lan falls within ERISA's catch-all category of single-employer plans." (citations omitted)); Definition of "Employer" Under Section 3(5) of ERISA—Association

24

The Parties have not cited—and we have not found—any controlling authority addressing the circumstances under which a group of employers may establish or maintain the precise type of employee benefit plan that Williams claims we have here: a multiple-employer defined-benefit plan. But in the context of applying ERISA's general definition of "employer" to welfare plans,[29] this Court has held that a group of employers must satisfy two criteria to act as an "employer" under ERISA § 3(5), 29 U.S.C. § 1002(5), and establish or maintain a multiple-employer plan:

1. "the group of employers that establishes and maintains the plan must be a 'bona fide' association of employers 'tied by a common economic or representation interest, unrelated to the provision of benefits'"; and

2. "the employer-members of the organization that sponsors the plan must exercise control, either directly or indirectly, both in form and in substance, over the plan."

*Gruber v. Hubbard Bert Karle Weber, Inc.*, 159 F.3d 780, 787 (3d Cir. 1998) (internal quotations omitted) (collecting cases).[30]

---

Retirement Plans and Other Multiple-Employer Plans, 84 Fed. Reg. 37,508, 37,511 (July 31, 2019) (codified at 29 C.F.R. pt. 2510) ("The Department [of Labor] has long taken the position in subregulatory guidance that, even in the absence of the involvement of an employee organization, a single 'multiple employer plan' under ERISA may exist where a cognizable group or association of employers, acting in the interest of its employer members, establishes a benefit program for the employees of member employers.").

[29] Welfare plans provide enumerated types of non-retirement benefits, like medical and surgical care. ERISA § 3(1), 29 U.S.C. § 1002(1).

[30] *Gruber* referred to the plans it was analyzing as "multi-employer plans." *See, e.g.*, 159 F.3d at 786. Because *Gruber* did not mention a collective bargaining agreement—and did not discuss the statutory provisions applicable to multiemployer plans, like ERISA § 3(37), 29 U.S.C. § 1002(37)—we read *Gruber* to address multiple-employer plans, not multiemployer plans. *See generally* 159 F.3d at 783–84.

Starting with the first criterion, Appellants argue that the Grandchildren lack a bona fide connection unrelated to the provision of benefits (*i.e.*, the Trust) and thus cannot establish or maintain a multiple-employer plan under ERISA. As such, the Trust purportedly is—at most—a collection of separate single-employer plans, one for each Grandchild (except Christopher, who did not personally employ anyone who received, was eligible to receive, or was promised a pension under the Trust). Williams responds that the Grandchildren have a bona fide connection because their "family relationship . . . is both genuine and unrelated to the provision of benefits." Answering Br. 68. Thus, Williams contends that the Trust is a multiple-employer plan.[31]

Appellants have the better argument. Wright and the other Grandchildren would be related without the Trust. But Williams cites no evidence connecting Wright's status as an *employer* to the other Grandchildren apart from the Trust. Thus, Williams failed to show that Wright has the sort of bona fide connection to the other relevant duPonts needed to establish or maintain a multiple-employer plan under ERISA § 3(5), 29 U.S.C.

---

[31] Williams also argues that *Gruber* is distinguishable because that underlying "[p]lan was established 'for entrepreneurial purposes.'" Answering Br. 68 n.18 (quoting *Gruber*, 159 F.3d at 786). *Gruber* adopted its two-part test to "[g]iv[e] effect to [Congress's] intention to exclude entrepreneurial ventures." 159 F.3d at 787. But that explains *why* the Court interpreted ERISA § 3(5), 29 U.S.C. § 1002(5), to require a bona-fide connection amongst a group of employers, not *when* that criterion applies. Williams offers no explanation for why the same statutory language should have a different meaning depending upon whether a purported plan was established for entrepreneurial purposes.

§ 1002(5).[32]  And if Williams participates in an employee benefit plan at all, that purported plan must be a single-employer plan sponsored by—and only by—her employer, Wright.[33]

### 2.  Established or Maintained

Because Williams failed as a matter of law to show that she could be participating in a multiple-employer plan, ERISA applies only if her employer, Wright, established or maintained the Trust.  *See* ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

Mary established the Trust in 1947.  None of the Grandchildren—including Wright—had a role in that "one-time, historical event."  *Advocate Health Care Network v. Stapleton*, 581 U.S. 468, 480 (2017) (citation omitted).  Williams does not suggest that

---

[32] We express no view on whether Grandchildren other than Wright have or had the sort of bona fide connection needed to establish or maintain a multiple-employer plan. Likewise, because we hold that Wright lacks a bona fide connection to the other Grandchildren, we need not reach the second *Gruber* factor, employer control.  *See* 159 F.3d at 787.

[33] Williams makes a passing reference to a Pension Benefit Guarantee Corporation regulation that appears to treat the intermingling of funds as a proxy for whether a group of employers established a multiple-employer plan when addressing plan termination and other related topics.  *See* 29 C.F.R. § 4001.2.  Williams makes no effort, however, to explain why that regulation applies here or how it squares with *Gruber*.  This "passing reference" does "not suffice to bring that issue before this [C]ourt."  *Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) (quoting *Laborers' Int'l Union of N. Am. v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)).  So we decline to address it.  For similar reasons, we decline to address Williams's passing reference to *Sara Lee Corp. v. Am. Bakers' Assoc. Ret. Plan*, 671 F. Supp. 2d 88, 98–102 (D.D.C. 2009), an out-of-circuit decision by a district court cited for persuasive value only, *see Shire US Inc. v. Barr Lab'ys Inc.*, 329 F.3d 348, 355 (3d Cir. 2003) (district court decisions treated as persuasive authority); *United States v. Maury*, 695 F.3d 227, 259 n.27 (3d Cir. 2012) ("Of course, the decisions of other circuits, while persuasive, are not binding on the district courts in this Circuit.").

Mary acted "directly" or "indirectly" on Wright's behalf by establishing the Trust. *Cf.* ERISA § 3(5), 29 U.S.C. § 1002(5). And Mary never was Williams's employer. Accordingly, the record contains no evidence that the only relevant employer, Wright, established the Trust. So Williams cannot rely on the establishment prong to trigger coverage under ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

That leaves maintenance. Williams claims that Wright maintained the Trust because she purportedly:

- had at least two employees who received or are entitled to receive pensions from the Trust;

- provided the trustees "census information[]" and "analyz[ed] the [Trust's] long-term financial viability"; and

- "arrang[ed] for [her] employees to receive [Trust] benefits when [they] reached eligibility."

Answering Br. 46–47.[34]

---

[34] When discussing the Grandchildren's purported status as fiduciaries, Williams claims that Wright "was involved throughout the years in the discussions and decisions regarding the possibility of reforming or terminating the [Trust]," and that Wright allegedly "acknowledged her status as a fiduciary, [p]lan administrator[,] and employer" in the Complaint. Answering Br. 64.

Even if we were to construe these points as relating to maintenance, it would not move the needle. Wright does not appear to have been copied on one of the correspondences that Williams cites in her brief. Wright's receipt of legal advice about the Trust hardly shows that she had the power to support, continue, or care for the Trust. And Wright's unheeded suggestion that Elton Corp. pick a successor trustee other than First Republic does not show that she had any actual or practical power over that decision, as the Trust Document did not give Wright any power or role in selecting the successor trustee; and there is no evidence that Wright had any control over Elton Corp., which, as the current trustee, had exclusive power under the Trust Document to pick the successor trustee.

28

Appellants argue that none of this conduct shows maintenance under ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1), because an employer must have "chief responsibility for [a] plan's administration and ERISA compliance" to maintain it. Grandchildren Opening Br. 68. Williams responds that an employer need only "support[], continue[], [or] care[]" for a plan to maintain it. *See* Answering Br. 47 n.12 (citations omitted). And Wright purportedly maintained the Trust under that definition by monitoring its finances, notifying the trustees that some employees may be eligible for pensions, and having former employees who received—or were eligible to receive—pensions from the Trust.

Even if we were to adopt Williams's definition of maintain, Williams adduces no evidence that Wright maintained the Trust. Proof that a former employee *received* a pension from the Trust tells us nothing about what Wright supposedly did to support, continue, or care for the Trust. And neither does proof that Wright passively received information about the Trust absent evidence that Wright had the power to do anything concrete to support, continue, or care for the Trust.

The only factual finding that comes close to satisfying Williams's proposed definition of maintenance was the apparent "responsibil[ity]" of the Grandchildren—presumably, including Wright—while Elton Corp. was the trustee to "notify[] Elton

Finally, Wright's allegations in the Complaint that she was a fiduciary, plan administrator, and employer cannot constitute judicial admissions that she maintained an ERISA plan because each contention is a legal theory, not a factual statement. *See, e.g.*, *Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.)*, 493 F.3d 345, 376 (3d Cir. 2007) (Judicial admissions "must be statements of fact that require evidentiary proof, not statements of legal theories." (citing *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972))).

29

Corp. of employees who *might* be eligible to receive benefits under the [T]rust." Post-Trial Op. *4 (emphasis added). But it was Elton Corp., not Wright, that (1) "evaluated the information to determine whether it agreed that the submitted employee was eligible for benefits"; (2) "interpret[ed] the [T]rust [Document]"; (3) "confirm[ed] in writing to the employee that he or she would receive a pension under the [T]rust pursuant to [Wright's] request"; and (4) when applicable, paid the pension.[35] And when First Republic took over as trustee, (1) "First Republic ma[de] all determinations related to the trust administration"; (2) "no other person or entity . . . ha[d] oversight over First Republic's administration of the [Trust]; and (3) "First Republic d[id] not communicate with the [Grandchildren] at all" because First Republic "determined that [the Grandchildren] [were] not interested parties and h[el]d no power under the [T]rust [D]ocument to give any input or direction for trust administration purposes." *Id.* at *5.

Moreover, the remaining factual findings and evidence all show that Wright lacked legal or practical power to support, continue, or care for the Trust. Wright had no mechanism to control or select the trustee under the Trust Document. Wright never was a trustee. And Williams offers no evidence that Wright had legal or effective control over Elton Corp. or First Republic, to the extent that could matter at all. Wright made no

---

[35] Post-Trial Op. *4–5. When holding that the Grandchildren were fiduciaries under ERISA, the District Court stated—without citing evidence or differentiating between the individual Grandchildren—that the Grandchildren "had the power to decide who would get a pension" and "could hand-pick the employees that would be provided pension benefits." *Id.* at *16. Those statements are inconsistent with both the plain text of the Trust Document and the District Court's factual findings that the *trustees* ultimately determined whether an employee was entitled to a pension.

contributions to the Trust.  And Wright had no role in the Trust's establishment.  Indeed, Wright does not appear to have realized until approximately 2014 that her employees might be eligible for a benefit under the Trust, nearly 70 years after the Trust was established, and a mere two years before this litigation began.  This wholly passive conduct falls short of showing that Wright supported, continued, or cared for the Trust.[36]

In sum, even if we were to adopt Williams's proposed definition of "maintain," Williams cites no facts suggesting that her employer, Wright, supported, continued, or cared for the Trust.  Thus, Williams has failed to show that the maintenance prong triggers coverage under ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).  And we leave for another day the precise definition of what an employer must do to maintain an employee benefit plan under ERISA.[37]

\*       \*       \*       \*       \*

Because Williams failed to adduce any evidence showing that Wright established or maintained the Trust, ERISA does not apply to the purported single-employer plan in which Williams participates.  Accordingly, the District Court erred by holding that the Trust is an employee benefit plan covered by ERISA.  And Appellants are entitled to judgment on all claims.

---

[36] We express no view on whether any of the other Grandchildren, Elton Corp., or First Republic established or maintained an employee benefit plan related to the Trust.

[37] Because Williams's failure to show that Wright established or maintained the Trust means that Williams cannot satisfy ERISA's coverage provision, we need not reach the other issues that the Parties raise on appeal.

## III.    CONCLUSION

For the reasons discussed above, no claim presented in this litigation survives. Accordingly, we will affirm-in-part as to the District Court's Article III ruling and reverse-in-part the District Court's judgment and remand this case with instructions to enter judgment (1) in favor of Elton Corp., Fields, First Republic, and the Trust as to Williams's claims, and (2) in favor of the Grandchildren as to First Republic's counterclaims / third party complaint.  We will also vacate the District Court's order appointing a special master.